

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0176-25

## ISRAEL GARCIA HERNANDEZ, Appellant

### v.

## THE STATE OF TEXAS, Appellee

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### WILLACY COUNTY

**McClure, J., filed a concurring opinion.**

## CONCURRING OPINION

I join the Court's opinion and write separately to discuss the unique nature of

the statute in this case, which effectively requires the jury to make a legal

determination. *See* TEX. PENAL CODE § 38.04 (Evading Arrest or Detention).

To prove that a defendant is guilty of evading arrest or detention, the State must prove, beyond a reasonable doubt, that the attempted arrest or detention was lawful. *See* TEX. PENAL CODE § 38.04(a) ("A person commits an offense if he intentionally flees from a person he knows is a peace officer . . . attempting lawfully to arrest or detain him."). As the Court discussed, the lawfulness of the detention in this case turns on whether Officer Garcia had reasonable suspicion to execute a traffic stop.

## I.      The Jury is Asked Even More than Usual in Evading Cases

It is exceedingly rare that the question of whether reasonable suspicion exists is decided by the jury.  This is one of those rare cases because the lawfulness of the detention was an element of the charged offense. Most of the time, the lawfulness of a detention is not an element but an evidentiary issue that can be raised pretrial through a motion to suppress and resolved by the trial court. But even if the trial court resolves the question pretrial, the jury might still be asked to make a reasonable suspicion determination at trial, pursuant to an Article 38.23 instruction. TEX. CODE CRIM. PROC. art. 38.23(a); *see Chambers v. State*, 663 S.W.3d 1, 5 (Tex. Crim. App. 2022).

An Article 38.23 instruction tells the jury to disregard any evidence that the jury "finds was unconstitutionally or illegally obtained." *Chambers*, 663 S.W.3d at 4. Such an instruction is only proper if there is a contested issue of "specific historical fact" for the jury to decide "that is material to the legality of obtaining the evidence." *Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008). An Article 38.23 instruction must provide the jury with guidance as to what facts to consider in making a reasonable suspicion determination. [1] *See id.* at 200. In other words, in a proper 38.23 instruction, the trial court tells the jury which facts to consider, and what the outcome must be if the jury believes those facts to be true.

In making such a determination, the jury cannot be asked to apply the law to the facts—rather, "the jury decides facts" and "the judge decides the application of the law to those facts." *Madden v. State*, 242 S.W.3d 504, 511 (Tex. Crim. App. 2007). This is because a jury is ill-equipped to "'wrestle with' the legal determination of whether certain facts do or do not constitute 'reasonable suspicion.'" *Id.* at 513 (citing *Garza v. State*, 126 S.W.3d 79, 86 (Tex. Crim. App. 2004)).

---

[1] In *Holmes*, the Court explained that a 38.23 instruction should sound something like this: "If the jury believes 'X' fact (*e.g.*, that [the officer] did not reasonably believe that the defendant was holding a garden hoe) . . . then it should disregard any evidence (such as the crack pipe) obtained by [the officer] as a result of the defendant's arrest and search." *Holmes*, 248 S.W.3d at 200.

For example, the appellant in *Madden* wanted a jury instruction on whether the "totality of the facts that [the officer] listed constituted 'reasonable suspicion.'" *Madden*, 242 S.W.3d at 512. This Court found the proposed instruction improper because it "focused only on the law" and "did not set out any specific historical fact that the jury was to focus upon" in determining whether the officer had reasonable suspicion. *Id.* at 512 (explaining proposed instruction failed to point to observations listed by officer, such as trembling face, shaking hands, fumbling for wallet, etc.). A jury "cannot be expected to decide whether the totality of certain facts do or do not constitute 'reasonable suspicion' under the law." *Id.* at 511.

In this case, the jury was instructed to determine whether the State proved, beyond a reasonable doubt, that "the attempted arrest or detention was lawful." The only guidance the trial court provided on how to assess the lawfulness of the detention was the following, included in the "Definitions" section of the jury charge:

*Lawful Attempted Detention*

A brief detention of a person by a peace officer is lawful if the officer has "reasonable suspicion." "Reasonable suspicion" means facts known to the officer that would lead a reasonable law enforcement officer to reasonably suspect that a specific person has engaged in criminal

activity, is engaging in criminal activity, or is about to engage in such activity.

Although this was not an Article 38.23 instruction but rather part of the definitions section of the jury charge, it would not withstand scrutiny had it been offered as an Article 38.23 instruction. This is because it asks the jury to do precisely what this Court held impermissible in *Madden*—to determine whether the totality of the facts gave rise to reasonable suspicion. *See Madden*, 242 S.W.3d at 511. If the jury is not equipped to make such a determination in the context of an Article 38.23 instruction, I do not see how a jury can be expected to make such a determination when deciding whether the State has met its burden in proving an essential element of an offense.

To submit the "lawful detention" element to the jury was not error of course, as the jury was required to determine whether the State had met its burden on each element. *See United States v. Gaudin*, 515 U.S. 506, 522–23 (1995) (explaining a criminal defendant's right to have a jury determine, beyond a reasonable doubt, his or her guilt of every element of the crime charged). Nor do I mean to suggest that the Legislature should eliminate the requirement that a detention or arrest be lawful for someone to be convicted of evading. The requirement is a vital constitutional

safeguard. By requiring that the detention or arrest be lawful, the Legislature commendably seeks to eliminate the possibility that a person might be convicted for evading an arrest or detention that violates the person's constitutional rights.

Moreover, conducting traffic stops is one of the most dangerous activities in which law enforcement engages. To require officers to have at least reasonable suspicion to detain fellow citizens is not merely a matter of liberty—it promotes the safety of officer and motorist alike.

While I believe that determining the lawfulness of a detention or arrest is a task best left to judges, the fact remains that it is an element of the offense. The detention's lawfulness therefore must be submitted to the jury.

## II. Going Forward

When the lawfulness of a detention is an element of the offense itself, there is no pretrial opportunity for the trial court to weigh in on the reasonable suspicion determination. This is because the lawfulness of a detention cannot be brought up in a pretrial suppression motion when the detention's lawfulness is an element of the offense. *Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005). A defendant charged with evading will also never be entitled to an Article 38.23 instruction regarding the lawfulness of the arrest or detention, as the lawfulness is no mere

evidentiary issue but an element of the offense itself. For the trial court to include a 38.23-style instruction in the jury charge in an evading case would infringe upon the jury's exclusive province as factfinder.[2]

When the lawfulness of a detention is an element of the offense, there is only one instance when the judge can intervene and find that the State has not met its burden in proving the element. That moment is after the State rests, assuming the defendant moves for a directed verdict. So to the chorus of trial judges in this state who ask, "Now what?" I say, "Ask yourself at the close of evidence, when the defendant moves for a directed verdict: Could a juror armed with an accurate understanding of the meaning of 'reasonable suspicion' find, beyond a reasonable doubt, that the officer in this case had reasonable suspicion to arrest or detain the defendant?"

In other words, I would encourage trial judges to take extra care when determining the sufficiency of the evidence regarding the "lawful detention"

---

[2] Even if it were appropriate to provide the jury with a 38.23-style instruction in this case, it is unclear what specific facts the judge could point to, as the facts which the State alleged gave rise to reasonable suspicion were uncontested (e.g., about 30 minutes passed between the 911 call and the stop, Mr. Hernandez was driving slowly, etc.). *See Robinson v. State*, 377 S.W.3d 712, 719 (Tex. Crim. App. 2012) ("Where the issue . . . [is] only the proper application of the law to undisputed facts, that issue is properly left to the determination of the trial court.").

element, and to define the "rational juror" as someone with a basic understanding of the applicable law. This is not an ideal remedy, but it is the most workable option. Whether reasonable suspicion exists is a question that even lawyers who pass the bar exam fail to get right (and maybe some judges). A jury's answer to that same question therefore calls for a more exacting review than would, say, a jury's fact determination.

### III.    Conclusion

With these thoughts, I join the Court's opinion in full.

The facts that were known to the officer in this case are comparable to, but significantly less than, those known to the officer in *Navarette v. California*, 572 U.S. 393, 395 (2014).

In *Navarette*, an anonymous 911 caller reported that a silver Ford F-150 pickup truck swerved and ran her off the road on Highway 1, at mile marker 88. *Id.* She reported the truck's exact license plate number and said the driver was headed southbound. *Id.* About twenty minutes later, an officer spotted a silver Ford F-150 pickup truck with the exact same license plate number headed southbound on Highway 1, near mile marker 69. *Id.* Justice Thomas, writing for the majority, found that the officer had reasonable suspicion to initiate a traffic stop based on these facts.

*Id.* This was largely because the 911 caller personally observed the defendant commit a dangerous traffic violation. *Id.* at 403.

The factual scenario presented in this case is distinct from the one in *Navarette*. There, the officer pulled over a truck that precisely matched the 911 caller's description, down to the color and license plate number. *See id.* at 395. Here, the 911 caller specifically reported seeing a four-door Chevrolet Silverado pickup truck and Mr. Hernandez was driving a two-door pickup truck.[3] In *Navarette*, the caller personally witnessed the driver commit a dangerous traffic violation. *See id.* Here, the 911 caller reported conduct that was not inherently suspicious, let alone illegal—she witnessed a pickup truck driving slowly on a dirt road around 10:15 p.m., in a partly-residential area. On the stand, Officer Garcia testified that it was common to see pickup trucks in the area, and that it is normal to drive slowly on dirt roads.[4]

Even if Officer Garcia could have reasonably believed that Mr. Hernandez's vehicle was the truck that the 911 caller described, the 911 caller did not witness any illegal activity. If Officer Garcia himself had witnessed Mr. Hernandez commit a single traffic infraction, the stop would have been valid. *See Navarette*, 572 U.S. 393,

---

[3] Officer Garcia was himself driving a department-issued four-door Chevrolet Silverado pickup truck.

[4] Driving slowly is arguably the *only* safe way to drive on a dirt road, particularly in the dark.

412 (Scalia, J., dissenting) ("Had the officers witnessed the petitioners violate a single traffic law, they would have had cause to stop the truck."). But before activating his emergency lights, Officer Garcia did not witness Mr. Hernandez commit any traffic violation nor did he observe Mr. Hernandez deviate from normal driving behavior.

Accordingly, I join the Court's opinion. The record simply does not establish facts sufficient to give rise to reasonable suspicion.

Filed: December 19, 2025

Publish